**THE TRIAL LAW FIRM, LLC**
Mart Harris, Esquire
Pa. Id. No. 319504

The Pittsburgher
428 Forbes Avenue, Suite 1700
Pittsburgh Pennsylvania 15219
412.588.0030 | MH@TLawF.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**JOHNSTOWN DIVISION**

| | |
|---|---|
| **MICHAEL ALSTON**, | Case No. 3:20-cv-163 |
| Plaintiff, | |
| vs. | **COMPLAINT IN CIVIL ACTION** |
| **SHEETZ, INC.**, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT**

NOW COMES the Plaintiff, Michael Alston by and through their attorneys, The Trial Law Firm, LLC and Mart Harris, Esquire and files the within Complaint in Civil Action against the Defendants and in support thereof, avers as follows:

1. The Plaintiff is Michael Alston ("Mr. Alston"). Mr. Alston is an adult Black individual who currently resides in Allegheny County, Pennsylvania.

2. The First Defendant is Sheetz, Inc. ("Sheetz"). Sheetz is a for profit business corporation with a corporate address of 5700 6th Avenue, Altoona Pennsylvania 16602.

3. This action is brought pursuant to 42 U.S.C. § 1981 to vindicate Mr. Alston's rights pursuant to the Thirteenth Amendment to the United States Constitution. Therefore, pursuant to 28 U.S.C. § 1331, the United States District Courts have subject matter jurisdiction over this dispute.

4. The events and/or omissions complained of below occurred in Johnstown, Pennsylvania. Therefore, pursuant to 28 U.S.C. § 1391(b), the Western District of Pennsylvania Johnstown Division is the proper Venue for this dispute.

5. On or about October 26, 2019, Mr. Alston was scheduled to work as a flagger in the general vicinity of the Sheetz location at 490 Central Ave., Johnstown, Pennsylvania 15902.

6. Sheetz has public restrooms and sells gasoline. Mr. Alston planned to use the restroom at Sheetz, and purchase gasoline for his vehicle.

7. Mr. Alston was the only Black member of the work crew, all other workers were white.

8. While investigating the possible locations of the hole which required Mr. Alston's presence, Mr. Alston was confronted by Manager, who walked outside of the Sheetz, and said that permission was needed before they could look around.

9. Mr. Alston directed Manager to one of his white co-workers[1] ("Co-Worker"), and both Mr. Alston and Manager walked towards his truck.

10. Manager told Co-Worker that they should have asked for permission, and then, pointing at and referring specifically to Mr. Alston, stated "he could be a terroristic threat."

11. The only significant outward difference between Co-Worker and Mr. Alston was that Mr. Alston is Black and Co-Worker is white. They wore similar construction clothing and protective/reflective outerwear.

12. Mr. Alston, extremely offended, walked away.

13. Mr. Alston still needed to use the restroom and purchase gasoline, so, he eventually went into the Sheetz store. Manager was still working.

---

[1] This white individual is not believed to have worked for the same company as Mr. Alston. Instead, he worked for a subcontractor.

14. Immediately upon seeing Mr. Alston, Manager ordered Mr. Alston to "get out." Mr. Alston, who did nothing wrong, indicated that he was a paying customer because he intended to buy gasoline, and had the right to use the restroom, and continued to the restroom area.

15. When Mr. Alston emerged from the restroom, he saw Manager politely conversing with another worker (who is white). Manager was asking the worker who Mr. Alston's employer was.

16. Mr. Alston, upon seeing the polite and cordial way in which Manager was addressing this white worker who was otherwise dressed similarly to Mr. Alston, asked Manager, "[a]m I the only one [dressed in yellow construction equipment] that looks like a terrorist?"

17. Manager became very angry and got close enough to Mr. Alston that he could see the spittle from her mouth fly forth as she yelled at him to "get out"; "get the fuck out"; and otherwise order Mr. Alston to leave Sheetz.

18. Mr. Alston had not yet purchased the gasoline, which he previously announced his intention to do, and due to Manager's violent and angry orders for Mr. Alston to leave Sheetz, he did so; only to buy gas at a Sunoco thereafter.

19. Mr. Alston was humiliated, terrified, and saddened due to these interactions, the impacts of which persist through the date of filing this Complaint.

20. These causes of action follow:

**COUNT I**
**42 U.S.C. § 1981**
**Race Discrimination in Contracts**

21. All other paragraphs are incorporated.

22. Mr. Alston is a protected individual under 42 U.S.C. § 1981.

23. Defendant is a public accommodation under 42 U.S.C. § 1981.

24. Mr. Alston engaged in protected activity as demonstrated in ¶¶ 6, 13, 14, and 18 *supra.*

25. Defendant interfered with Mr. Alston's protected activity as demonstrated in ¶¶ 14, 17-19 *supra*.

26. Defendant's interference can be inferred as discriminatory as demonstrated in ¶¶ 7-11, 14-17 *supra*.

27. As a direct and proximate cause of Defendant's interference, Mr. Alston suffered injuries and damages.

WHEREFORE, Plaintiff requests Judgment in his favor and against Defendant, and that all damages and other remedies permitted by law be assessed against the Defendant.

JURY TRIAL DEMANDED.

Respectfully submitted on August 12, 2020 by:

**THE TRIAL LAW FIRM, LLC**

_____,
Mart Harris, Esquire
Pa. Id. No. 319504
*Trial Lawyer for Michael Alston*